## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Antonio Thomas (B-32607),       )
       )
       Plaintiff,     )
       )     Case No.  21 C 6673
       v.     )
       )     Hon. Mary M. Rowland
David Gomez, *et al.*,      )
       )
       Defendants.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

In this *pro se* civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, Plaintiff Antonio Thomas alleges that Defendants David Gomez, Malte B. Roling, Keenan Young, and Cythnia Harris violated his constitutional rights during his incarceration at Stateville Correctional Center. Before the Court is Defendants' motion for summary judgment, to which Plaintiff has responded. For the reasons discussed below, the Court grants Defendants' motion [49].

### I.  Summary Judgement Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

1

248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citations and quotations marks omitted), without "weigh[ing] evidence, mak[ing] credibility determinations, resolv[ing] factual disputes and swearing contests, or decid[ing] which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Thus, in making that determination, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.)

2

Local Rule 56.1(a) requires the moving party to provide "a statement of material facts" as to which the moving party contends there is no genuine issue for trial. LR 56.1(a); Fed. R. Civ. P. 56(1). The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); LR 56.1(b), (e). In the case of any disagreement, the opposing party must reference "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. The nonmoving party may also present a separate statement of additional facts that require the denial of summary judgment that consists of "concise numbered paragraphs" "supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(b)(3), (d).

In this case, Defendants filed a LR 56.1 statement of material facts and memorandum of law with their motion for summary judgment. (Dkts. 50, 51.) Consistent with the Local Rules, Defendants also provided Plaintiff with a LR 56.2 Notice, which explains what LR 56.1 requires of a litigant opposing summary judgment. (Dkt. 52.)

For his part, Plaintiff submitted a seven (7) page document, that is comprised of an introduction, a statement of fourteen undisputed facts, and a short argument section. [63] at 1-7. Plaintiff appends over sixty pages of exhibits to his responsive pleading. (*Id.* at pgs. 8-75.) Even generously construed, Plaintiff's submissions cannot be deemed an appropriate response to

Defendants' statement of material facts.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Under LR 56.1, Plaintiff was required to respond to each of Defendants' numbered statements of fact by admitting the fact, disputing it, or admitting it in part and disputing it in part. LR 56.1(e)(2). Plaintiff failed to do so here. Because Plaintiff did not properly respond to Defendants' LR 56.1 statement of facts, the Court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

Additionally, as Defendants point out, Plaintiff's statement of additional facts is also problematic.[1] Some of Plaintiff's statements are unaccompanied by any citation to the record (*see e.g.,* Dkt. 63, pg. 2 at ¶ 2; pg. 3 at ¶ 13), or, where Plaintiff has provided a citation, he has not cited to *specific* evidentiary material (*see e.g., id.*, pg. 2 at ¶¶ 5-7; pg. 3 at ¶ 19). Several of Plaintiff's statements contain legal arguments (*see e.g., id.* at ¶ 13). Further still, Plaintiff has

---

[1] The Court understands Plaintiff is asserting additional facts at pages 2-4 of his response, under LR 56.1(b)(3). (*See* Dkt. 63 at pgs. 2-4). Defendants have responded to them as additional facts according to LR 56.1(c)(2). (*See* Dkt. 65.)

duplicated numbers when listing his facts (*see id.*, pg. 2, listing two ¶ 3s), and he has not identified or organized his appended exhibits in a way that corresponds with his asserted facts (*see e.g., id.*, pgs. 19-34, Exhibit A includes several documents, including a disciplinary ticket, Defendants' responses to Plaintiff's requests to admit, and an affidavit from Plaintiff's brother; pgs. 39-42, Exhibit F follows Exhibit B; pg. 53, a page from Exhibit F is included in the middle of Exhibit C.)

As such, Plaintiff's statement of additional facts runs afoul of the Court's Local Rules. *See* LR 56.1(b)(3), (d); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Therefore, the Court has considered Plaintiff's statement of additional facts only to the extent it is supported by the record or where Plaintiff could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *see also* Fed. R. Evid. 602. With these findings, the Court turns to the facts of this case, stating those facts as favorably to Plaintiff as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

### III. Background

#### A.  Procedural History

Plaintiff challenges a disciplinary action that was taken against him in August 2020 when a cell phone was discovered in another inmate's cell. Plaintiff was issued a disciplinary ticket in connection with the cell phone, and a disciplinary hearing was conducted on August 11, 2020. As a result of the disciplinary action, Plaintiff was placed in segregation in unfavorable living

5

conditions.[2] (Dkt. 11, Plaintiff's Amended Complaint at pgs. 5-9.)

By order dated June 17, 2022, the Court found that Plaintiff's allegations sufficiently stated a procedural due process claim (against all Defendants), a retaliation claim (against Defendant Roling), and a conditions-of-confinement claim (against all Defendants). (Dkt. 10, 06/17/22 initial screening order at pgs. 2-5.)

## B.    Undisputed Facts

Plaintiff, Antonio Thomas, is an individual in the custody of the Illinois Department of Corrections (IDOC). During the timeframe alleged in the Amended Complaint, Plaintiff was housed at Stateville Correctional Center (Stateville). (Dkt. 50, Defendants' Statement of Facts, ¶ 1.) Defendant David Gomez was the Warden of Stateville, and Defendants Malte B. Roling, Keenan Young, and Cynthia Harris were correctional officers at Stateville. (*Id.*, ¶¶ 2-5.)

## Events Leading up to/Surrounding the August 2020 Disciplinary Action

During the timeframe alleged in the Amended Complaint, Plaintiff and his brother, Duel Thomas, were both housed at Stateville and lived on the same gallery. (*Id.*, ¶ 7.) On January 22, 2020, an iPhone 6s cell phone was found inside a cell at Stateville. (*Id.*, ¶ 9.) An individual in custody is given a PIN number to make phone calls from the specific facility at which the individual is housed. (*Id.*, ¶ 10.) Individuals in custody may submit numbers to the facility for approval. The approved numbers will be put on the individual's Personal Assigned Number (PAN) list so that the individual may call the number or receive calls from the number. (*Id.*, ¶ 11.) Plaintiff added his brother's (Duel Thomas's) requested numbers to his own PAN list, so that his brother

---

[2] In his Amended Complaint, Plaintiff alleged that there was an infestation of rodents and insects, poor ventilation, poor heating and cooling, inadequate plumbing, and showers containing fungus and mold. (Dkt. 11 at pg. 7.) He also alleged that on August 30 and 31, while in restrictive housing, he was exposed to smoke after another inmate started a fire. (*Id.*)

could use Plaintiff's PIN number to make extra phone calls. (*Id.*, ¶ 12.) Plaintiff added Cornell Elem (Plaintiff's brother's friend), Erika Thomas (Plaintiff's brother's wife), Dantrell Dehart (Plaintiff's brother's son), and Desmond Bush (Plaintiff's brother's stepson) to his PAN list.  (*Id.*, ¶ 13.)

On or about August 4, 2020, Plaintiff had a conversation with Defendant Roling in relation to the contraband cell phone. (*Id.*, ¶ 14.) During this conversation, Plaintiff advised Roling that one of the numbers on the phone belonged to David Thomas, who is another one of Plaintiff's brothers.[3] Plaintiff did not make any representations related to the other numbers in the cell phone. (*Id.*, ¶ 15.) Plaintiff testified that Roling knew that Thomas had nothing to do with the phone. (*Id.*, ¶ 16.)

On or about August 4, 2020, Plaintiff received a ticket for Offense 109: Electronic Contraband and Offense 110:  Impeding or Interfering with an Investigation. (*Id.*, ¶ 17.)  In part, the ticket states as follows:

> The following Offender Disciplinary Report is being issued to Inmate Thomas, Antonio B32607 at the conclusion of the Internal Affairs Investigation that concluded on August 4, 2020. On January 22, 2020, an iPhone 6s cell phone (Electronic Device) was discovered in Unit C, Cell 1042 concealed inside the television of Inmate [redacted]. This R/I discovered two cellphone numbers assigned to the cell phone [*sic*] information was obtained which stated two different SIM cards were being used which explains the two different numbers. Two numbers were identified as being assigned to the iphone 6s. A subpoena for [the two phone numbers] were [*sic*] received [*sic*] and reviewed from Verizon and Sprint respectively and it was determined that THOMAS utilized [*sic*] to send/receive call and text messages with numbers on his (THOMAS) approved PAN (personal assigned numbers) list.

(*Id.*, ¶ 19.)

### The August 11, 2020 Adjustment Committee Hearing

---

[3] At his deposition Plaintiff testified that "David Thomas is in the world."  (Dkt. 51-2 at pg. 22:16-17.)

On August 11, 2020, Plaintiff had his adjustment committee hearing for the August 4, 2020 disciplinary ticket. (*Id.*, ¶ 20.) Defendant Young and Defendant Harris sat on Plaintiff's adjustment committee hearing. (*Id.*, ¶ 21.) Prior to the hearing, Plaintiff never had any issues with Defendant Young or Defendant Harris. (*Id.*, ¶ 22.)

During his hearing, Plaintiff did not submit a written statement, request any witnesses, or ask for a continuance. (*Id.*, ¶ 23.) Plaintiff did not tell the adjustment committee hearing that the numbers that were on the cell phone belonged to his brother. (*Id.*, ¶ 24.) Plaintiff was found guilty of both offenses and the adjustment committee recommended discipline of 3 months of C grade and 4 months of segregation. (*Id.*, ¶ 25.)

On September 10, 2020, Defendant Gomez's designee finalized the recommended discipline by signing off on the adjustment committee report. Plaintiff was served with a copy of the written statement on September 24, 2020. (*Id.*, ¶ 26.) On October 9, 2020, Plaintiff's discipline was adjusted to one month. (*Id.*, ¶ 27.)

**Plaintiff's Time in Segregation (August 5, 2020 to October 1, 2020)**

Plaintiff was housed in segregation from August 5, 2020 to October 1, 2020 in two different cells. (*Id.*, ¶ 28.) Plaintiff testified that the first cell had no electricity, was "filthy" and had roaches. (Dkt. 51-2, Plaintiff's Deposition at pg. 62:18-20.) Plaintiff complained and he was moved after a day or two to an "upstairs" cell. (*Id.* at pg. 62:21-24; 63:1.)

Plaintiff testified that "whoever was in that cell before [him] must have set the cell on fire because it was black, whatever, residue on the ceiling, black mold." (*Id.* at pg. 63:2-4.) Plaintiff testified that he asked for cleaning supplies, and "nothing." (*Id.* at pg. 63:4-5.) Plaintiff testified that there were roaches, and that "you got to keep the lights on in seg just to contain the roaches."

(*Id.* at pg. 63:5-10; 64:5-6.) Plaintiff testified further that there was mold in the X-house shower, as well as in his cell around the toilet and sink. (*Id.* at pg. 64:16-19.) He was not provided with cleaning supplies throughout the two-month period in segregation, although he did have access to his own soap. (*Id.* at 65:1-3; 14-16.) Plaintiff testified that he "barely" had access to running water while he was in segregation. (*Id.* at pg. 65:22-24.) Plaintiff also testified at his deposition about poor ventilation, but that he had his personal fan (which he was able to plug in and use in his cell in the X-house). (*Id.* at pg. 66:6-9; 19-22.)

When asked about his injuries, Plaintiff testified that he suffered some smoke inhalation (which required him to rinse out his nose), that "[i]t was hard to smell," and that it was "eating at [him] . . . that [he] was done wrong for something [he] didn't do." (*Id.* at pg. 72:12-24: 73:6-16; 74:14-22.)

Plaintiff testified that he did not talk to Defendants Roling, Harris and/or Young about the segregation conditions. (*Id.*, ¶¶ 33-35.) Plaintiff testified that he did not speak with Defendant Gomez about the segregation conditions until one day before his release from segregation. (*Id.*, ¶ 36.) Plaintiff testified that he never wrote Defendants Gomez, Roling, Harris, or Young any letters about the unfavorable conditions that he suffered. (*Id.*, ¶ 37.)

**Plaintiff's Grievances**

*Grievance no. 2842*

On September 3, 2020, Plaintiff wrote grievance no. 2842 and grieved the investigation that led to the ticket and the adjustment committee hearing for the ticket. On November 20, 2020, Counselor Muhammed responded to grievance no. 2842. On July 15, 2021, grievance officer Anna McBee responded to grievance no. 2842. On July 26, 2021, David Gomez's designee concurred

with the grievance response. On September 2, 2021, the Administrative Review Board (ARB) responded to grievance no. 2842. (*Id.*, ¶ 38.)

### Grievance no. 2825

On September 9, 2020, Plaintiff wrote grievance no. 2825 and grieved the August 30, 2020 and August 31, 2020 "fires" in Stateville's X-house where Plaintiff was housed during his time in segregation. On November 20, 2020, Counselor Muhammed responded to grievance no. 2825. (*Id.*, ¶ 39.) Plaintiff did not appeal grievance no. 2825. (*Id.*, ¶ 40.)

### Grievance no. 2782

On September 11, 2020, Plaintiff wrote grievance no. 2782 and grieved the adjustment committee hearing of August 11, 2020 (related to his disciplinary action). Plaintiff marked the grievance as an emergency. On September 28, 2020, Plaintiff's grievance was marked as non-emergent. (*Id.*, ¶ 41.) Plaintiff did not re-submit grievance no. 2782 to his counselor as a non-emergency grievance. (*Id.*, ¶ 42.)

### Grievance no. 2814

On September 11, 2020, Plaintiff wrote grievance no. 2814 and grieved the adjustment committee hearing of August 11, 2020 (related to his disciplinary action). On October 24, 2020, grievance officer Anna McBee responded to the grievances and recommended that the disciplinary ticket of August 4, 2020, be expunged. On November 4, 2020, Defendant Gomez's designee concurred with the expungement. (*Id.*, ¶ 43.)

## IV.  Analysis

### A.  Plaintiff's Due Process Claim

Defendants argue they are entitled to summary judgment because Plaintiff's right to due process was never triggered. They also argue that, even if it was, Plaintiff was afforded constitutionally sufficient protections. (Dkt. 51 at pgs. 6-10.) The Court agrees that Plaintiff's right to due process was never triggered, and thus his due process claim fails on that basis.

The mere placement of an inmate in disciplinary segregation does not implicate a due process liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). Instead, the conditions potentially rise to the level of a due process violation if they pose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Accordingly, "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

When determining whether conditions of segregation rise to the level of an "atypical and significant hardship," the Court must consider "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion*, 559 F.3d at 697-98.

Here, Plaintiff spent two months in segregation (from August to October 2020). (Dkt. 50, ¶ 28.) Plaintiff testified he was placed in segregation on August 5, 2020. (Dkt. 51-2 at pg. 63:13-16.) He testified that "[w]hen he first got to seg, they put [him] in Lower West 8 behind a plexiglass cell, fireproof cell[.]" (*Id.* at pg. 62:18-20.) There was "[n]o electricity, filthy, roaches[.]" (*Id.* at pg. 62:20-21.) But when he complained to officers, he was moved -- on August 6 or 7, 2020 -- out of that cell and into a new cell "upstairs." (*Id.* at pg. 62:21-24;  63:1.)

11

As to the new cell, Plaintiff testified that "whoever was in that cell before [him] must have set the cell on fire because it was black, whatever, residue on the ceiling, black mold." (*Id.* at pg. 63:2-4.) He asked for cleaning supplies, and "nothing." (*Id.* at pg. 63:4-5.) With respect to roaches, Plaintiff testified that "Stateville is so nasty. Roaches everywhere. You can't contain these roaches. And the roaches so bad, before you leave seg, they make you stand in front of seg and take everything out of your box and make sure you don't take roaches back to the cell house." (*Id.* at pg. 63:5-10.) Plaintiff also testified that "you got to keep the lights on in seg just to contain the roaches." (*Id.* at pg. 63:5-10; 64:5-6.)

There was mold in the X-house shower, as well as in his cell around the toilet and sink. (*Id.* at pg. 64:16-19.) Again, he was not provided with cleaning supplies during his two-month period in segregation, although he did have access to his own soap. (*Id.* at pg. 65:1-3; 14-16.) Plaintiff testified that he "barely" had access to running water while he was in segregation. (*Id.* at pg. 65:22-24.) Plaintiff also testified at his deposition about poor ventilation, but that he had his personal fan (which he was able to plug in and use in his cell in X-house). (*Id.* at pg. 66:6-9; 19-22.)

When asked about his injuries, Plaintiff testified that he suffered some smoke inhalation (which required him to rinse out his nose), that "[i]t was hard to smell," and that it was "eating at [him] . . . that [he] was done wrong for something [he] didn't do." (*Id.* at pg. 72:12-24: 73:6-16; 74:14-22.)

Plaintiff describes deplorable conditions in segregation. But he was there for a relatively short period of time and the experience did not result in any significant or lasting physical or mental injuries. The experience did not create an "atypical and significant hardship." Notably, Plaintiff was moved out of the first cell after a day or two. He had access to soap, at least some running

water, and a fan while he was confined in the second cell. While Plaintiff testified, in generalized terms, to the presence of "roaches" in segregation, his testimony does not suggest that the vermin were in his immediate vicinity, that he was ever bitten, that he was unable to safely move away from them, that the vermin destroyed his food items and/or personal property or interfered with his ability to go about his day-to-day activities.

Courts have repeatedly found that similar -- and arguably worse -- cell conditions for longer periods of time were insufficient to create a protected liberty interest. *See e.g., Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at *6, 7 (N.D. Ill. Dec. 17, 2010) (examining conditions of inmate's six-month stay in Stateville's F House that included prevalent vermin, infrequent trash removal, a stained toilet, and insufficient cleaning supplies, and finding that the conditions were "not so harsh or atypical of the ordinary incidents of prison life to give rise to constitutional due process concerns with [plaintiff's] disciplinary hearing."); *Coleman v. Baldwin*, No. 15 C 5596, 2016 WL 537970, at *4 (N.D. Ill. Feb. 11, 2016) (holding that six months in segregation with insects, mice, broken windows, shower restrictions, as well as denial of wheelchair and walking cane did not implicate plaintiff's liberty interests); *see also Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *11 n.10 (W.D. Va. May 28, 2013) (holding that alleged transfer from "pristine single cell" in one facility to another facility that was "a 'dirty, filthy, stinking, roach and rat infested sewer' with cramped cells, no hot water, broken windows, and rampant drug use" was insufficient to allege "atypical or significant hardship"); *Williams v. Sanders*, No. 10-1131, 2010 WL 4687840, at *2 (C.D. Ill. Nov. 4, 2010) ("Transferring a prisoner from the general population to segregation unit" with "noisy, unsanitary cells" did "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," and is "'within

the expected parameters of the sentence imposed by a court of law.'"); *cf. McKinley v. Atchison*, No. 3:16-CV-661-NJR-MAB, 2019 WL 4744839, at *7 (S.D. Ill. Sept. 30, 2019) (finding conditions including mice and cockroach infestation, cracked window, no heat, no hot water for months on end, and no cleaning supplies implicated plaintiff's due process rights where conditions lasted more than three years); *Basemore v. Brookman*, No. 16-CV-562-SMY-RJD, 2018 WL 1366587, at *3 (S.D. Ill. Mar. 16, 2018) (conditions including mold, mice, other inmates throwing feces, and banging on doors potentially constituted "atypical and significant hardship," even though general population at Pontiac experienced similar conditions, where plaintiff's segregation lasted nine months).

Additionally, Plaintiff's reduction to C-grade is insufficient to implicate a liberty interest. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (demotion to c-grade and loss of visitation privileges do not implicate a liberty interest); *see also Montanez v. Butler*, No. 14-CV-754-MJR-SCW, 2017 WL 1425943, at *5 (S.D. Ill. Apr. 21, 2017) ("Punishments such as a demotion in grade or commissary restriction do not amount to a constitutional deprivation.").

Accordingly, the Court finds that the complained-of-conditions that Plaintiff endured in segregation for a two-month period are insufficient to create a protected liberty interest. Defendants are entitled to summary judgment on Plaintiff's due process claim.

### B. Plaintiff's Conditions-of-Confinement Claim

With respect to Plaintiff's conditions-of-confinement claim, Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (Dkt. 51 at pgs. 11-14.) They also argue that the claim fails on the merits. (*Id.* at pgs. 14-15.) The Court agrees.

With respect to the exhaustion issue, the Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available administrative remedies by following to completion the procedural rules for grievances within a correctional institution. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Ford v. Jimenez*, 362 F.3d 395, 397 (7th Cir. 2004). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). As discussed below, the Court finds that Defendants have met that burden here.

The undisputed evidence shows that Plaintiff filed a total of four grievances during the timeframe relevant to this lawsuit. (Dkt. 50 at ¶¶ 38, 39, 41, 43.) Three of those grievances (nos. 2842, 2782, and 2814) pertained to the August 2020 disciplinary ticket/hearing. (*See id.*, 38, 41, 43.) The remaining grievance (no. 2825) pertained to "fires" in Stateville's X-house where Plaintiff was housed following the August 2020 disciplinary action. (*See id.*, ¶ 39.)

Defendants contend that Plaintiff did not substantively exhaust his conditions of confinement claim because, as an Illinois state prisoner, he was required to comply with 20 Ill. Admin. Code § 504.810(c), which provides that a written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the

name of each person who is the subject of or who is otherwise involved in the complaint." (Dkt. 51 at pgs. 12-13.) The court agrees.

Here, grievance no. 2825 mentioned "fires" in the X-house, but did not mention any other unfavorable living conditions that he complains about in this lawsuit. Thus, grievance no. 2825 did not give prison officials notice of the conditions-of-confinement claim Plaintiff is pursuing in this case, and prison officials did not have an opportunity to address his concerns through the administrative process. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006)) (the purpose of the exhaustion requirement is to "give the prison an opportunity to address the problem before burdensome litigation is filed.").

Defendants also contend that Plaintiff did not procedurally exhaust his conditions of confinement claim because, as an Illinois state prisoner, he was required to appeal the response to grievance no. 2825 in accordance with 20 Ill. Admin. Code §§ 504.830(d) and 504.850(a). (Dkt. 50 at pgs. 13-14.) That argument is also well-taken.

Plaintiff specifically testified at his deposition that he did not appeal grievance no. 2825, and that he did not know why. (Dkt. 51-2, Plaintiff's Deposition at pg. 71:3-6.) Plaintiff's failure to properly follow each step of the prison's administrative review process, both substantively and procedurally, renders his conditions of confinement claim unexhausted.[4] *See Pozo*, 286 F.3d at 1025. Even if Plaintiff had properly exhausted this claim, it still fails on the merits.

To establish a constitutional violation with respect to a prisoner's living conditions, he must demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendant acted with deliberate

---

[4] Plaintiff's response to Defendants' summary judgment does not address the issue of exhaustion. (*See* Dkt. 63.)

indifference to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). Defendants argue that Plaintiff's conditions-of-confinement claim falters on the subjective prong. (Dkt. 51 at pgs. 14-15.) The Court agrees.

Here, there is no evidence before this Court that suggests that Defendants Roling, Harris and/or Young were aware of the specific complained-of conditions. Plaintiff specifically testified at his deposition that that he did not talk to Defendants Roling, Harris and/or Young about the segregation conditions. (Dkt. 51 at ¶¶ 33-35.) With respect to Defendant Gomez, Plaintiff testified at his deposition that he spoke with him about the segregation conditions but did not do so until *one* day before his release from segregation. (*Id.*, ¶ 36.) Plaintiff also testified at his deposition that he never wrote Defendants Gomez, Roling, Harris, or Young any letters about the unfavorable conditions that he suffered. (*Id.*, ¶ 37.) Accordingly, the Court grants summary judgment to Defendants on Plaintiff's conditions-of-confinement claim.

### C. Plaintiff's Retaliation Claim

Finally, the Court turns to Plaintiff's retaliation claim against Defendant Roling. To establish a claim of retaliation, a prisoner must show: (1) that he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the protected activity and the deprivation. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (prisoner must show that the protected activity was "at least a motivating factor" in the retaliatory action). If the plaintiff satisfies these elements, the burden shifts to the defendant to rebut the causal inference with evidence showing that he would have taken the same action without any retaliatory motive. *See Mays*, 575 F.3d at 650; *Hasan v. U.S.*

*Dep't of Labor*, 400 F.3d 1001, 1005–06 (7th Cir. 2005).

If the defendant provides legitimate and non-retaliatory reasons for his actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

Defendant Roling argues that Plaintiff's "refusal to cooperate" in the cell phone investigation was not protected activity, and, even if it was, Plaintiff cannot establish that Defendant Roling's action -- writing the disciplinary ticket -- was motivated by Plaintiff's "refusal to cooperate." (Dkt. 51 at pgs. 3-5).

The Court will assume for purposes of this order that Plaintiff's conduct/speech during his conversation with Defendant Roling on August 4, 2020 was protected activity.[5] To the extent that

---

[5] In its June 17, 2022, initial screening order, the Court noted the split among the circuits whether refusing to cooperate in an investigation is protected speech, and that the question has yet to be resolved in the Seventh Circuit. (*See* Dkt. 10 at pg. 3.) The weight of authority suggests that an inmate's refusal to cooperate with a prison investigation is not protected speech unless the inmate invokes his Fifth Amendment right against self-incrimination. In allowing the retaliation claim to proceed at the screening stage, the Court explained that "[t]his claim very well may not be viable if the Seventh Circuit weighed in one way or other, but without the benefit of adversarial input on the circuit split, the Court will not yet reach the issue." (*Id.* at pg. 4.) Roling now points to the Seventh Circuit's 2017 unpublished decision in *Caffey v. Maue*, 679 Fed. Appx. 487 (7th Circ. 2017), involving a prisoner plaintiff who witnessed an inmate attack an officer, who refused to cooperate during the investigative interview, called his interrogators names, and was ultimately placed in investigative segregation for 30 days as a result. The *Caffey* Court stated that "'prisoners may be compelled to disclose information during internal investigations provided they are not punished for refusing to make self-incriminating statements without immunity.'" 679 Fed.Appx. at 490 (citing *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 1995)). The *Caffey* Court found that "Caffey never hinted that answering the investigator's questions might incriminate him, so he was not privileged to refuse." *Id.* Here, Defendant Roling maintains that "Plaintiff's test[imony] . . . suggests that he never invoked his Fifth Amendment right during his conversation with Defendant Roling." (Dkt. 51 at pgs. 3-4.) Defendant Roling avers that "[b]ased on Plaintiff's testimony [Plaintiff] ha[d] no reason to because Plaintiff knew that he had nothing to do with the phone. As such, when Plaintiff refused to cooperate in the investigation, he was not engaging in constitutionally protected activity." (*Id.* at pg. 4.) The Court rejects Roling's argument for several reasons.

First, as the Court specifically noted its initial review order, the cell phone investigation in this case, *did* implicate Plaintiff -- at least to the extent that it linked Plaintiff to the contraband item by way of the shared numbers

the disciplinary ticket followed on the heels of the specific conversation that Plaintiff had with Defendant Roling on August 4, 2020 (i.e., at the close of the cell phone investigation), the Court will assume that the timing is sufficient to raise an inference of causation. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (while suspicious timing alone is rarely sufficient to find retaliation, it can give rise to an inference of causation if the adverse action followed "close on the heels of protected expression.").

But, "suspicious timing is not enough to overcome uncontradicted evidence of other, non-retaliatory motives" for the alleged retaliatory action. *Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010) (unpublished) (unrebutted evidence that prison disciplined inmate for disobeying orders overcame retaliation claim); *see also Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012) (unpublished) (officers not liable for allegedly retaliatory cell shakedown if they would have conducted it no matter what). And, a prisoner challenging a disciplinary action as retaliatory in nature does not have a colorable claim when he admits to having committed the alleged misconduct. *See LaBoy v. Clements*, No. 15 CV 10771, 2017 WL 2936705, at *8 (N.D. Ill. July 10, 2017) (St. Eve, J.) (plaintiff who admitted he was making impermissible three-way calls could not argue the disciplinary action was retaliatory in nature, even if he was not convicted of every disciplinary charge); *see also Whitfield v. Snyder*, 263 F. App'x 518, 522 (7th Cir. 2008) (finding

---

that were discovered on the cell phone. Second, Plaintiff's deposition testimony about whether he ever formally attempted to invoke his right to remain silent is ambiguous. (*See* Dkt. 51-2 at pg. 36:16-23.) Third, in his response to Defendant Roling's argument on this issue, Plaintiff has cited to a 2018 unpublished decision where the Seventh Circuit limited *Caffey* to an inmate's refusal to divulge known information versus an inmate not having any information to divulge. *McKinley v. Schoenbeck*, 731 Fed.Appx. 511 (7th Cir. 2018). The *McKinley* Court reasoned that, "'[t]ruthfully answering questions during an investigation, even if those answers are not what the officers want to hear, is consistent with a prison's penological objectives[,]'" and, therefore, protected speech. 731 Fed. Appx. at 514 (citing *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995). Roling's reply does little to distinguish *McKinley* from the facts of this case (or from *Caffey*, for that matter) with respect to the protected activity prong of the retaliation analysis. Rather than further parse the issue (as the claim fails in any event), the Court will assume, for purposes of this order, that Plaintiff's conduct/speech during the cell phone investigation was protected activity.

that a plaintiff who admitted to committing the misconduct giving rise to his discipline on several counts could not pursue retaliation claim); *Harris v. Hodge*, No. 3:11-CV-0097, 2016 WL 6581294, at *4 (S.D. Ill. Nov. 4, 2016) (Rosenstengel, J.) (inmate's retaliation claim failed because he admitted that officers searched his cell because they suspected him of having contraband).

Here the evidence in the record shows that the disciplinary ticket in this case was written after a 6-month long investigation into an item of contraband -- a cell phone -- that was found within the institution. (Dkt. 50 at ¶ 19.) At his deposition, Plaintiff admitted that he regularly put numbers on his own PAN list so that his brother, Duel Thomas, could have extra phone time. (*Id.* at ¶ 12.) After the cell phone was discovered in an inmate's cell, subpoenas were issued to both Verizon and Sprint. (*Id.* at ¶ 19.) The subpoenas revealed that the numbers that were in the cell phone were also on Plaintiff's PAN list. (*Id.*) During his deposition, Plaintiff specifically conceded that he should have received the ticket due to the shared numbers -- even though he maintained he was *not* involved with using/possessing the contraband cell phone. (Dkt. 51-2 at 45:9-24.) Notably, Plaintiff responded "yes" during his deposition when the Defendants' attorney specifically asked him "[s]o the issue wasn't the ticket itself, it was that they found you guilty after your brother [Duel Thomas] took the weight for it?" (*Id.* at pg. 46:1-4.)

In this case, Defendant Roling took adverse action against Plaintiff in writing the disciplinary ticket on August 4, 2020, and the undisputed evidence shows that the ticket was based on a proper, non-retaliatory motive. Specifically, the disciplinary ticket was issued after a lengthy investigation concerning contraband that had been introduced into the institution and was later found to contain information (phone numbers) that linked Plaintiff to the contraband item. It is clear from Plaintiff's deposition and his response to the summary judgment motion (*see* Dkt. 63 at

pg. 6, Point 4) that he is dissatisfied with having been disciplined in connection with the cell phone incident and that he was issued a ticket that was later expunged. But, he does not point to any evidence that Defendant Roling's proffered reason for writing the ticket on August 4, 2020 -- months after an ongoing investigation into the cell phone that contained numbers implicating Plaintiff -- was a pretext.

Defendant Roling is entitled to summary judgment on this claim. The Court need not address Defendant Roling's qualified immunity argument because there is no evidence his conduct was constitutionally deficient.

## V. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment (Dkt. 49). Final judgment shall enter.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate

rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: May 17, 2024

_____
UNITED STATES DISTRICT JUDGE